Good morning, your honors. May it please the court, Charles Fleischman appearing for the appellant, Sun Sun Lin. Can I interrupt just for one second? I just want to clarify one thing. I'm sorry to interrupt your argument. Was the district court's order filed under seal? Was any part of it filed under seal? No. Not that I know of. Nothing in the district court was filed under seal? No. Okay. I must have confused it with something else. I apologize. This is an aristic case that basically deals with the issue of whether or not she received a full and fair review of the termination of her benefits. The issue arose when she lost her administrative appeal and sent a letter asking for all the records that were reviewed or all the relevant records and received a letter back from a lawyer for the employer or the plan stating that the CBC had only reviewed the documents that were post-appeal documents that were submitted after the appeal and they did not review the original medical records that she had filed in support of her claim originally. I think the regulations are pretty clear that they have to review everything and they have to consider everything. A little deeper look into the record revealed that they relied on the opinion of Dr. McGraw who they hired to review their medical records. He misread or failed to discuss the records of the Amon Clinic where they did a spec test, a spec scan that showed that she had some evidence of traumatic brain injury and they never even discussed it. They failed to discuss her award of social security benefits which was procured through a company that they referred her to in which they were taking credit for all the time. Also, the when you look even a little deeper into the record, it turns out that the CBC, the committee that makes the final determination never probably reviewed anything. They received a synopsis of the claim from the claim manager who was the woman who originally denied the claim and the claim manager also failed to mention the spec test from the Amon Clinic and then when they wrote the denial letter to her they quoted almost directly from the letter, or I'm sorry, the review that was prepared for them by the claim manager which violates another regulation in that they accepted the well, they relied on a prior opinion on the opinions of the person who made the original decision to terminate the benefits. And that's basically the essence of the case. I really have nothing. Well, when was the amend group's report submitted? Wasn't it late? No, it was submitted timely at the time of the administrative appeal. She sent in a letter with exhibits and that was one of the exhibits. It is also listed among the exhibits that were presented to the CBC. Whether they read it or not it's doubtful, but they had it. They had it all in front of them. And Dr. McGraw claims to have reviewed it also so he had it. There were no documents that were submitted late to the on the appeal. Unless there are any questions I'd like to reserve my time. That remains for any possible rebuttal arguments. Okay. Good morning. May it please the Court. My name is Hardy Murphy of Reed Smith. Here on behalf of FLE, Mellon Long Term Disability Plan. I want to start out by saying that the Court should affirm the District Court's upholding of summary judgment in favor of Mellon here for at least three reasons. The deference that's afforded the plan under the plan documents. The fact that the CBC acted properly under that deference that's afforded to it under the plan and that the documentation considered by the CBC demonstrates that the CBC's decision was reasonable. And there are four sets of documents that we looked at here to come to the conclusion that the CBC acted reasonably when it denied Ms. Lynn's application for her appeal of the denial of her long-term disability benefits. And that is her own battery of tests. We talked about that a little bit and that's captured by the AMIN Clinics documents where it references the battery of tests that were done on Ms. Lynn. None of those tests confirmed that she had any disability. Another set of documents is the Plaintiff's Own Disability questionnaire that she submitted in connection with Cigna's obtaining of information as it accumulated the administrative record. In that questionnaire, Ms. Lynn stated all of the activities that she could perform on a daily basis. And that included not only grooming herself, but tasks that were beyond those that you might confine to duties that people would normally perform just to take care of themselves. And that's, for instance, working on the computer, working on Microsoft Word, Excel, surfing the Internet. She engaged in gardening and she was active in her son's school in Boy Scouts. In addition to several other duties that she identified that she could perform in that questionnaire. The other set of reports is Dr. McGraw's report. And Dr. McGraw did a comprehensive review of the documents and he stated in his summary that he reviewed the entire administrative record. Now, on those records all established that Ms. Lynn did not have a disability that precluded her, importantly, from working under any occupation standard that set forth in the Long-Term Disability Plan. It was upon that information that the CDC based its decision to uphold the denial of Ms. Lynn's benefits. What information? The information that set forth in the administrative record. Well, and this is what, this is an, we get a fair number of disability benefit cases under ERISA. This one's unusual because it's not so much a challenge to the decision itself as a challenge to process. The contention being offered up by the appellate is that the CDC is itself required to review which it did not undertake here because it is alleged it reviewed predigested material or Dr. McGraw or the synopsis that it received from, I believe her name is Ms. Miller. Correct. And as a result, the CBC did not comply with what is contended to be its obligation to itself review the whole record, which is why I ask the question, what did they review? Did they, did the CBC itself review the entire administrative record? They did, Your Honor, and they set that out in the denial letter to the, excuse me, the letter affirming the denial of her appeal. I didn't say that artfully, excuse me. In the letter denying her appeal, the CBC stated that we reviewed the entire administrative record. They stated that in two parts, Your Honor, and with respect to that particular document, I can give the Court of Cite the letter to Ms. Lynn. I don't have it readily available, but I can give the Court of Cite and Avid Cite on it, but the CBC did send a letter to Ms. Lynn in which it stated that it had denied her appeal after having reviewed the entire administrative record. And part of that administrative record also included the AIMAN Clinics report that was attached to Ms. Lynn's appeal. That review also included the AIMAN Clinics report. That appeal also included all of the information that had been accumulated by Cigna, a third-party independent of the Mellon Long-Term Disability Plan with respect to Ms. Lynn's medical treatment. And the records that were reviewed in that respect all confirmed that she did not have a disability that disqualified her from working in any occupation. And the CBC's letter is, excuse me, it's at Admin 52, our supplemental excerpt of record 56. And in that respect, as stated on page 52 of the administrative record, the CBC states that we consider the entire administrative record, including information submitted by the plaintiff in Dr. McGraw's report. So with respect to the Court's question, the CBC did review the entire administrative record when it rendered its decision to deny her long-term disability application. I'm looking at the last page of it. Sorry, a 12-page document. The last page, ER 152, has a list of attachments, and there are 19 different documents listed there. Do you have an understanding as to whether the list of attachments encompasses everything that's come to be part of the administrative record, or at least had been part of the administrative record at that time? It's included in the administrative record. That's correct, Your Honor. And is there anything in the administrative record not on this list of attachments? What's the citing in your honor? ER 152. Let me just put this into context. We've got a couple different issues here, and you may have answers or things to say to us with respect to both factual and legal. Let me make it clear. I'm not trying to say that I think that there is a legal obligation for the CBC itself to turn every page. Indeed, I would be stunned if the CBC itself turned every page. But at this moment, we're talking about factually. And when they say they review the entire administrative record, I'm trying to pin down what exactly that means. So what, as I understand it, what they got is this synopsis, which is the 12-page summary, and then this list of attachments, the 19 documents listed on ER 152. And my question is, are there things in the administrative record not within this list of attachments that would suggest that those items did not go before the CBC itself? I don't believe there is, Your Honor. And with respect to the synopsis that the Court is referring to, it is just that. It's a synopsis. But the CBC, and we have to confine our review here to what's in the administrative record. There's no evidence that they did not review the administrative record. In fact, they say to the contrary in their letter to Ms. Lynn that we did review the entire administrative record. And then they go through and cite to you various attachments that were part of that administrative record that flowed up into that review. So in this respect, Your Honor, when you look at this under the deferential standard that's entitled to plan administrators here, and I want to emphasize the type of plan we're dealing with, it's not the type of plan that typically comes up when you have your insurer who's both insuring and then administering the plan. This is a VIVA that Mellon has established. And what that means is that as the Court is well aware, that there's nothing that can be done here that will have that money ever revert back to Mellon. So in that respect, the discretion that's afforded to the plan to review and administer the terms, and there's no doubt here, and that's conceded in the briefing, that Mellon had that discretion. It looked at this and it acted reasonably in coming to the conclusion that she was not disabled under the any occupation standard. And in that respect, that decision should be upheld because the District Court looked at that and reasonably concluded based upon the law and the facts that that is what happened here, that there was a determination that she was not disabled under that particular standard. Who pays benefits? And where does the money for the benefits come from? Mellon funds the plan, Your Honor. So it is self-funded? Correct. I guess I don't understand your point. You say there's no chance the money will come back to Mellon, but it's Mellon that pays it out in the first place. That is correct. I'm not saying it's evil or anything, but this is a self-interested decision because the money comes from Mellon in the first instance. But with respect to in terms of it hitting Mellon's bottom line, you're right, Your Honor, that it's self-funded and it does come out of Mellon at the outset. However, under the Internal Revenue Code section under which this VBA is established, that money cannot revert ever back to the employer. So the fact that it's put into the trust and this lends request for disability benefits is but a drop in the bucket with respect to the amount of funds that are put into that trust. There's no incentive to somehow deny her claim to get that money back because it can't come back to the employer in any way. You don't have a reversionary interest. What happens if the claims exhaust the money set aside in the trust? I don't know the answer to that question, Your Honor. But the way I understand it, the way it works is that Mellon can never get that money back. But it may be called upon to pay more in. Correct, Your Honor. So continuing with the argument here, there was a reference in the appellate brief about the Social Security Administration's award here. And I would just like to submit that that was not raised or discussed at the District Court level. So we submit that that's been waived on appeal. But nevertheless, if you look at the entire administrative record here, it's pretty clear there that the CBC and the doctors who reviewed Ms. Lynn's records, including Dr. Mahn, that's her clinic. And that's someone who she, one of her doctors referred her to. And the importance of that referral is it came after she received the initial denial letter from Mellon. She went and she met with that particular doctor and he looked at all of the records and he concluded that although there was some sort of symptomology, there was no finding of a disability here that precluded her from any occupation under the any occupation standard. Now, he didn't come out and directly say that. However, he didn't come out and say that she was disabled and should not be working. So when you put that together with Dr. McGraw's report, who looked at all of this, Dr. Mahn's report, who was located by the applicant here, and then the CBC's review of the entire record, including Ms. Lynn's own questionnaire that was prepared after the Social Security Administration determination, it's clear that on those different set of facts, on that more inclusive set of facts, that the CBC here correctly concluded that she was not disabled under its standard that applies under its plan, which is a more rigorous standard for disability than the Social Security Administration applies because it states that you are not going to be viewed as not disabled if you are able to work any occupation. And with that, unless there are any questions, I will submit. Thank you. All of her doctors said that she was totally disabled. They said that she had problems walking. She lost her balance. She had fatigue. She had problems with cognitive functioning. They all said that she was disabled. Dr. McGraw reviewed the records and said there's no objective evidence of any disability. She then went to this Dr. Mah at the Amon Clinic, and she had, among other tests, brain scan and Dr. Mah found in the brain scan which is objective evidence that she had, if you look at ER 132 and 133, she had signs of brain injury. If you look at page 131, ER 131, finding 7, brain trauma, combination of findings suggests past brain trauma. These findings include decreased prefrontal pole activity, increased post-op, there's objective findings right there. And their complaint was that there was no objective findings to support her claim of disability. So she gets an objective test, and now they're saying Dr. Mah found this, yeah, but he didn't find that she was disabled. You don't go to a doctor with physical complaints, and the doctors don't usually make findings of disability unless they're asked specifically the question. But the issue was whether there's objective evidence to support her claim. And there's the objective evidence. And when they got the objective evidence, they gave it to Dr. McGraw. Dr. McGraw ignored it. And then when it went up to the CBC, they got this synopsis which from the claim manager, and she ignored it. And then the CBC wrote their decision denying the appeal and affirming the termination of benefits, and they ignored it. Certainly she's entitled to a full and fair review. She's entitled to the CBC's opinion based upon all the evidence in front of them and based upon a true bit of evidence that she's got evidence of a brain trauma which can directly affect, I think most people would agree, her ability to cognitively function, her ability to walk, fatigue, and all the other things that she was complaining about. The question is did the CBC, well, review the entire record. You raised that question. And the answer is no. They even admitted they didn't. And if you look at 153, 154,   And if you look at 153, 154, and 154, the lawyer for Reeve Smith wrote in reply to my client, the medical records related to your initial claim for LTD benefits are not relevant in determining whether you continue to be totally disabled more than two years later under the anti-occupation standard. The CBC did not directly consider those documents in making its determination to deny your claim. Now, how can this person's medical records that show that she's disabled not be relevant? And how can you make that determination, even if it's possible, without looking at them? Well, the documents you've identified as showing her disability wouldn't be within the category you just described, that is, the ones more than two years before. Well, they would because those show her initial state and that was the initial base upon which they thought she was disabled. Then I suggest you would have made an argument saying look at these documents. There's nothing in the brief that identifies documents in the category you say they closed their eyes to that would have made a difference. Well, I don't know. That was at the time they were evaluating her under the own occupation standard. Now we're under the inter-occupation standard. And in retrospect, I'm sure the lawyer who drafted that letter didn't think of the context it was going to be raised, but I'm still concerned about, okay, is there anything that arguably based on that whatever was in those records was enough to show that she was disabled from her own occupation because they made that finding. But they knew that. There's no question but that they knew that. Yes. But like the example I gave, a man can lose an arm and he could be a machinist and they could find that he's not disabled from that he's disabled from his own occupation. But then under the own And then we get in the argument he doesn't have an arm, he can't do anything. But we don't get that argument. I mean, what we've gotten is a fairly technical argument about didn't consider everything. And I never find out what it is they didn't consider in that category that would have made any difference. I think that every plan beneficiary or participant is entitled to the benefits of the plan. And one of those benefits is a decision by the CBC and not some later look by I don't mean to be offensive by judges who are not don't have that responsibility. The CBC, she's entitled to a decision by the CBC who examines all of the evidence, from the Amen Clinic to the original claim. Well, almost all objections, certainly, and in trial, if it's not prejudicial, it doesn't matter. So unless you can demonstrate prejudice from what you say was the technical failure to review everything, I don't see how it makes any difference. It's certainly with the Amen Clinic respect. That's later in time. That's why I made this distinction. Okay. Because what I hear you citing is you didn't consider the stuff more than two years before. The subsequent evidence sets a different argument. But I'm responding to what I just heard, and I just don't see how it makes any difference. It's not my main point. Okay. Thank you. We thank you. We thank both counsel for the argument. The case just argued is submitted. That concludes the argument calendar for today. We're adjourned. All rise. Thank you.
judges: Noonan, Clifton, Bybee